813 F.2d 751
 Georgia Attrep KARAM, et al., Plaintiffs-Appellants,
v.
TRAVELERS INSURANCE COMPANY, Defendant-Appellee,
v.
UNITED STATES FIDELITY & GUARANTY COMPANY, Defendant-Appellant.
LOUISIANA FARM BUREAU CASUALTY INSURANCE COMPANY, Plaintiff,
v.
TRAVELERS INSURANCE COMPANY, Defendant-Appellee,
v.
Frank R. BAILEY, Defendant-Appellant.
 No. 86-4881
 
 Summary Calendar.
 United States Court of Appeals,
Fifth Circuit.
 April 8, 1987.
 Allen L. Smith, Jr., Plauche, Smith & Nieset, Lake Charles, La., for Karam et al.
 Frederick L. Cappell, Raggio, Cappel, Chozen & Berniard, Lake Charles, La., for U.S. Fidelity & Guar. Co.
 John E. Demourelle, Kinder, La., for Bailey.
 Jimmy L. Dauzat, Brinkhaus, Dauzat, Falgoust & Caviness, Opelousas, La., James B. Doyle, Woodley, Barnett, Cox, Williams, Fenet & Palmer, Lake Charles, La., for defendant-appellee.
 Appeal from the United States District Court for the Western District of Louisiana.
 Before POLITZ, WILLIAMS, and JONES, Circuit Judges.
 POLITZ, Circuit Judge:
 
 
 1
 The plaintiffs in these consolidated cases appeal the district court's grant of summary judgment limiting the uninsured motorist liability of Travelers Insurance Company to $5,000 per person and $10,000 per accident. Finding a valid limitation of coverage, we affirm.
 
 Background
 
 2
 On July 4, 1984, Albert Karam was a passenger in a truck owned by Tennessee-Gas Pipeline Company (Tenneco), driven by a Tenneco employee, Frank R. Bailey. An oncoming vehicle crossed the centerline and collided with the Tenneco truck, tragically killing Karam and injuring Bailey. The present consolidated and removed actions involve separate suits against Travelers, as the uninsured motorist (UM) insurer of the Tenneco truck, and against the Karam UM carrier.
 
 
 3
 Travelers moved for summary judgment limiting its liability to $5,000/$10,000, in accordance with the selection of that limit by James Brewster, Tenneco's Manager of Casualty Insurance and Claims. The plaintiffs opposed the motions, contending that Brewster did not have the requisite authority to choose anything other than the two-million-dollar liability coverage provided in Travelers' policy with Tenneco.
 
 
 4
 The essential facts are not in dispute, only their legal ramifications are debated. These cases are therefore appropriately resolved by resort to Fed.R.Civ.P. 56. The record reflects that starting in 1979 and continuing each year thereafter, Tenneco secured liability and UM insurance coverage on the subject truck. The insurance was purchased by Brewster and, in each year save one,[1] Brewster executed the form required by Louisiana law[2] to limit the uninsured motorist insurance to $5,000 per person and $10,000 per accident. Under the cited Louisiana statutory provision, absent such a limitation the UM coverage automatically equals the liability limits of the policy. Appellants maintain that Brewster was without authority to choose the lower limits for Tenneco and, therefore, Travelers had a two-million-dollar UM exposure.
 
 Analysis
 
 5
 The core issue is whether Brewster had the requisite authority to select the lower limits of coverage. Once validly selected, the lower limits applied to all renewals of the policy unless the insured chose otherwise.
 
 
 6
 Apparently it has been assumed that Louisiana law is to be applied to determine whether Brewster had authority to act on behalf of Tenneco, a Delaware corporation. We accept that assumption, observing as set forth infra that there is no significant difference between the controlling rubrics in the civil law and common law jurisdictions.
 
 
 7
 Whether a person has authority to bind a corporation is essentially an issue of agency. 2 W. Fletcher, Cyclopedia of the Law of Private Corporations Sec. 434 (rev. perm. ed. 1982). Both the Louisiana law of mandate and the common law rules of agency recognize two types of authority: actual and apparent. Actual authority may be express or implied. It is deemed express if granted in either written or oral specific terms. It is considered implied if the authority is inherent in the agent's position or is a necessary incident of express authority. Apparent authority is an equitable doctrine which provides that one who acquiesces in representation by another is bound by the representative's acts, despite the absence of actual authorization. As Louisiana's First Circuit Court of Appeal succinctly opined:
 
 
 8
 An actual agency is a contract between the principal and agent created either expressly or by implication.
 
 
 9
 * * *
 
 
 10
 * * *
 
 
 11
 An agency is created expressly by the oral or written agreements between the parties. It is created by implication when, from the nature of the principal's business and the position of the agent within that business, the agent is deemed to have permission from the principal to undertake certain acts which are reasonably related to the agent's position and which are reasonable and necessary concomitants of the agent's express authorization. Implied authority connotes permission from the principal for the agent to act, though that permission is not expressly set forth orally or in writing. Generally, one should look from the viewpoint of the principal and the agent to determine whether the agent has implied authority.
 
 
 12
 The concept of apparent authority only comes into play when the agent has acted beyond his actual authority and has no permission whatsoever from his principal to act in such a manner. The principal will be bound for such actions if he has put his agent in such a position or has acted in such a manner as to give an innocent third person the reasonable belief that the agent has authority to act for the principal.
 
 
 13
 AAA Tire & Export, Inc. v. Big Chief Truck Lines, Inc., 385 So.2d 426, 429 (La.App.1980) (citations omitted). Identical principles apply to corporate agency issues in Delaware, Liberty Mutual Ins. Co. v. Enjay Chemical Co. (now Exxon Corp.), 316 A.2d 219 (Del.Super.Ct.1974), and in other common law jurisdictions. See, e.g., Sturgeon v. State Bank of Fisk, 616 S.W.2d 578 (Mo.App.1981); Hanson Southwest Corp. v. Dal-Mac Const. Co., 554 S.W.2d 712 (Tex.Civ.App.1977); Newberry v. Barth, Inc., 252 N.W.2d 711 (Iowa 1977); Gardner v. Rensmeyer, 221 Kan. 23, 557 P.2d 1258 (1976). See generally 2 W. Fletcher, Cyclopedia of the Law of Private Corporations Sec. 434 et seq. (rev. perm. ed. 1982).
 
 
 14
 In its common-sense analysis and resolution of this dispute, which we embrace, the district court used the principle of implied authority.
 
 
 15
 With a Fortune 500 company such as Tenneco, it is necessary that many different and varying functions and duties be delegated to officers and employees of the corporation in order that the operation of the corporation may be conducted in a continuous, systematic and profitable manner. This often involves giving wide latitude and discretion to corporate personnel. To require that a company such as Tenneco draft a corporate resolution authorizing its personnel to make everyday decisions regarding the conduct of the corporation's affairs would be to place unduly burdensome restrictions on a large corporation....
 
 
 16
 Despite the absence of a corporate resolution specifically authorizing Brewster, or anyone else, to select limits for uninsured motorist insurance coverage, the record clearly shows that such authority was vested by the corporation, through a chain of command, in Brewster. An affidavit of one of Tenneco's corporate vice presidents reflects his continual exercise of authority over all insurance matters for Tenneco commencing in 1974, and his authorization of Brewster to manage liability insurance, including the power to select UM coverage on Tenneco vehicles. The record also contains a four-page "Position Description" form detailing Brewster's authority and designating him as "Manager, Casualty Insurance and Claims." In a section titled "Decision Making Authority," Brewster is given power to approve "changes in insurance coverage of a routine nature," and "authorization of insurance invoices up to $500,000." Brewster's attestation that he had the authority to execute the lower limits is viewed within the limitations imposed on proof of agency by the agent and we have so viewed his affidavit.
 
 
 17
 The evidence of record makes it clear beyond cavil that Brewster was impliedly authorized to select routine insurance coverage for Tenneco. Despite appellants' intense urgings, we are not persuaded that it was necessary that Tenneco introduce a corporate resolution specifically authorizing this particular representative to execute this particular insurance contract.
 
 
 18
 It is not the law that the authority of the agent or officer to act for a corporation can be proved only by the minutes of its board of directors or by a contract in writing. * * * Existence of authority may be shown by proof of course of business, the knowledge of the board of directors of the corporation, and by presumptions of such knowledge. The agent's authority may also be shown by evidence that he does business for the corporation and on its behalf as agent with the knowledge and acquiesence of its directors or by their direction. The corporation in such case is bound by his acts and declarations within the scope of the business intrusted to him.
 
 
 19
 2 W. Fletcher, Cyclopedia of the Law of Private Corporations Sec. 444, p. 346 (rev. perm. ed. 1982). We are convinced that although the board of directors apparently did not expressly authorize Brewster to act, its custom of permitting him to do so, and allowing the vice president in charge of insurance to delegate authority to him, constituted an implied actual agency.[3]
 
 
 20
 As the district court observed, appellants' reliance on Arcemont v. Voisin, 468 So.2d 785 (La.App.1985), writ denied, 474 So.2d 947 (La.1985), is misplaced. Arcemont turns on facts markedly different from those now before us and on the review of facts uniquely available to Louisiana appellate courts. The principles of agency employed by the Arcemont court are the same as those applied herein. The result in Arcemont does not direct a different result than that reached by the district court.
 
 
 21
 The partial summary judgments rendered in the consolidated cases are AFFIRMED.
 
 
 
 [1]
 In 1982 the form was executed by another Tenneco official
 
 
 [2]
 La.R.S. 22:1406(D)(1)(a)
 
 
 [3]
 We find the acquiescence of the board of directors conclusively establishes Brewster's authority to select insurance. Such acquiescence would also be relevant to the ratification theory raised by Travelers and to a claim of apparent authority. Because we find implied actual authority we do not reach those issues