# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-01-00358-CV

**Harvey Gough, Appellant**

v.

**State of Texas, Adjutant General's Department; General Daniel James; Colonel William Goodwin; Jane Doe; Richard Roe; and John Doe, Appellees**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 126TH JUDICIAL DISTRICT NO. GN0-00421, HONORABLE JOHN K. DIETZ, JUDGE PRESIDING

Appellant Harvey Gough appeals an order dismissing his suit against appellees the State of Texas, Adjutant General's Department, General Daniel James, Colonel William Goodwin, Jane Doe, Richard Roe, and John Doe (collectively the "Department"). We must determine whether Gough's claims pertaining to his involuntary discharge from the Texas Army National Guard fall within an articulated exception of nonjusticiable claims relating to discretionary military affairs. Finding that Gough's contentions fall short of the threshold at which judicial examination of internal military affairs becomes proper, we affirm the district court's order.

## FACTUAL AND PROCEDURAL BACKGROUND

Harvey Gough received an honorable discharge upon his involuntary separation from the Texas Army National Guard (the "Guard"). Gough served in the Guard as a part-time enlisted

member from 1968 until 1998.[1]  After allegedly insulting a superior officer, appellee Colonel William Goodwin, the Department convened a Section 15 hearing, charging Gough with insubordination to a ranking officer.  Pursuant to a plea agreement dated June 6, 1998, Gough acquiesced to a written reprimand and forfeiture of two month's pay.

Gough appealed the plea bargain to appellee General Daniel James, the Adjutant General.  After filing his appeal, Gough made several requests to meet personally with General James.  Gough received notice on June 24th that a meeting had been scheduled with General James in Austin on June 25th.  Gough notified General James that he would be unable to attend the scheduled meeting, explaining that, as the owner of a small business in Dallas, he could not attend an Austin meeting on such short notice; Gough requested that the meeting be rescheduled.  Instead, on June 26th, General James issued a ruling abrogating the plea bargain agreement and ordering Gough's discharge from the Guard.

Gough appealed the Department's discharge order to the Governor, who declined to intervene, advising Gough that his appropriate remedy was an appeal through the "proper channels."  Subsequent to receiving the Governor's letter, Gough filed a complaint with the Equal Employment Opportunity Commission, which issued him a right to sue letter.  Gough then filed this suit in district court.  He now appeals that court's order granting the Department's plea to the jurisdiction and dismissing the cause.

---

[1]  By the time of his discharge, Gough achieved the rank of Chief Warrant Officer 4.

## DISCUSSION

By seven issues, Gough contests the district court's order. We discuss the issues together as they present a single issue—whether the Department's order discharging Gough from the Guard presents a justiciable claim such that the district court erred in granting the Department's plea to the jurisdiction.

The gravamen of Gough's complaint is that General James improperly denied his hearing request and that the Department's order discharging him was erroneous. It is well established that civil courts may review claims that military agencies failed to comply with their own regulations. *See Hodges v. Callaway*, 499 F.2d 417, 419 n.2 (5th Cir. 1974). Here, Gough admits that this Court can offer redress of the Department's discharge action only to the extent General James acted outside the scope of his authority. The dispositive issue on appeal, then, is whether Texas Army National Guard regulations require the Department to give Gough a hearing before ruling on his plea bargain appeal.

Section 431.089 of the Texas Government Code authorizes the Adjutant General to discharge a person from the state military forces according to regulations adopted by the Adjutant General or in accordance with federal law or regulations. Tex. Gov't Code Ann. § 431.089(a) (West 1998). In 1981, pursuant to his delegated authority, the Adjutant General promulgated Texas Army National Guard Regulation 635-100, entitled "Administrative Discharge of Officers and Warrant Officers." Regulation 635-100 was amended in 1997, ostensibly in response to this Court's decision in *Cole v. Texas Army National Guard*.[2]  909 S.W.2d 535, 539 (Tex. App.—Austin 1995, writ

_____

[2] The amended regulations took effect January 15, 1998.

3

denied) (rejecting an interpretation of Regulation 635-100 that would allow the Adjutant General, based on his sole determination and without a hearing, to discharge an officer for cause). Unlike its predecessor, amended Regulation 635-100 contains no hearing requirement. We must determine, however, whether the law nonetheless necessitates one.

Although Gough concedes that the amended Regulation does not require a hearing, he contends that, without a hearing requirement, amended Regulation 635-100 contravenes federal law and is therefore void as violative of the Supremacy Clause of the United States Constitution. *See* U.S. Const. art. VI, cl. 2. The Department responds that the federal regulations Gough relies upon are inapposite because they apply only to the United States Army, the United States Army Reserve, and to the federal component of the United States National Guard. Under the Supremacy Clause of the United States Constitution, a state law or regulation is preempted and "without effect" only if it conflicts with federal law. *See id.*; *Maryland v. Louisiana*, 451 U.S. 725, 746 (1981). The Department argues that, because it is possible to comply with both Army Regulation 600-8-24 and amended Regulation 635-100, the preemption doctrine does not apply.

We must, if possible, construe a statute to render it constitutional. *Cash Am. Int'l, Inc. v. Bennett*, 35 S.W.2d 12, 18 (Tex. 2000). State law may be expressly preempted by a federal law, *see Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 516 (1992), or impliedly preempted if: (i) the federal law contains language indicating an intent to preempt or occupy an entire field of regulation, leaving no room for the states to supplement federal law, *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230-31 (1947); (ii) it is impossible to comply with both federal and state law, *Florida Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 142-43, (1963); or (iii) the state law presents

4

an obstacle to the accomplishment and execution of congressional objectives, *Hines v. Davidowitz*, 312 U.S. 52, 61 (1941). *See also Freightliner Corp. v. Myrick*, 514 U.S. 280, 287 (1995) (citing *English v. General Elec. Co.*, 496 U.S. 72, 78-79 (1990)); *Moore v. Brunswick Bowling & Billiards Corp.*, 889 S.W.2d 246, 247-48 (Tex. 1994). Further, in fields traditionally regulated by the states, a presumption exists that, absent a clear and manifest expression of congressional intent, the historic police powers of the states are not supplanted by federal law. *California v. ARC Am. Corp.*, 490 U.S. 93, 101 (1989) (quoting *Rice*, 331 U.S. at 230).

Gough contends that, as amended, Regulation 635-100 is without legal effect because it is "contrary to the express provisions of Chapter 4 of Army Regulation 600-8-24 which requires that a Board of Inquiry be convened to adjudicate the administrative separation of an officer." However, merely because Army Regulation 600-8-24 requires an administrative hearing not found in amended Regulation 635-100, it does not follow that the amended regulation conflicts with, and is therefore preempted by, federal law. Service in the United States Army National Guard is governed by federal law whereas service in the Texas Army National Guard is regulated by state law. *Compare* 32 U.S.C. §§ 101-716 (1959 & Supp. 2001), *with* Tex. Gov't Code Ann. §§ 431.001-.138 (West 1998 & Supp. 2002). Although the Texas Army National Guard is a *component* of the United States Army National Guard, it is also a separate and distinct entity. *See* 10 U.S.C. § 101(c) (1998) (distinguishing between the Army National Guard of the United States and the Army National Guard of the individual states). As such, the Texas National Guard has the ability to regulate its members' conduct, independent of membership in the United States National Guard, so long as doing so does not interfere with the objective of the United States National Guard. *See Hines*, 312 U.S. at 61.

Because Army Regulation 600-8-24 does not explicitly preempt Texas National Guard regulations and it is not impossible to comply with both federal and Texas regulations,[3] in order to be preempted by Army Regulation 600-8-24, we must find that amended Regulation 635-100 presents an obstacle to the accomplishment and execution of congressional objectives. *See id.*

Even if we accept Gough's argument that Army Regulation 600-8-24 is contrary to amended Regulation 635-100, which we do not, we cannot say the amended regulation presents an obstacle to accomplishing or executing the United States National Guard's objectives. Section 431.044 of the Texas Government Code grants the Governor the power to "adopt regulations that the governor considers appropriate for the organization of the *Texas* National Guard . . . ." Tex. Gov't Code Ann. § 431.044 (West 1998) (emphasis added). Regulations concerning the organization of the Texas National Guard must conform with existing military law governing state military forces and, as near as practicable, to the organization of the United States armed forces. *Id.* §§ 431.004, .044. However, as Gough concedes in his reply brief, "there is no requirement that the military organization of the Texas Army National Guard conform exactly to the organization of the United States Armed Forces." Accordingly, we cannot say that amended Regulation 635-100 is invalid pursuant to the Supremacy Clause.

Having concluded that amended Regulation 635-100 is not preempted by federal law, we must now determine whether the Department complied with its own procedures for discharging

---

[3] Gough suggests that amended Regulation 635-100 must conform to Army Regulation 600-8-24 because his discharge from the Texas Army National Guard adversely affects his membership in the United States Army National Guard. The Department responds that, because Gough technically remains a member of the United States Guard, no conflict exists and preemption does not apply. Because the record is void of evidence supporting these claims, we do not address them.

Gough. Two provisions of amended Regulation 635-100 are relevant to this question. Section (5)(a)(4) provides:

> An individual processed under this regulation who feels his commander is unjustified in his requesting his administrative discharge may appeal to The Adjutant General of Texas for a review of his case. The Adjutant General *may* appoint a board of officers to investigate the appeal and provide pertinent recommendations based on the findings of the board.

Texas Army National Guard Regulation 635-100, § (5)(a)(4) (emphasis added). Section (5)(b) states that the Adjutant General "may cause the administrative discharge of an officer for reasons indicated in paragraph 4 without the request or recommendation of an intermediate commander." *Id.* § (5)(b).

Gough does not contend that the Department failed to follow these provisions in discharging him from the Guard. Because the Department complied with the requirements of amended Regulation 635-100, the doctrine of nonjusticiability precludes our further review of the Department's discretionary military decision discharging Gough. *See Hodges*, 499 F.2d at 419. Consequently we overrule Gough's first,[4] third and sixth issues. Because these issue are dispositive of this appeal, we need not address his remaining issues. *See* Tex. R. App. P. 47.1.

---

[4] In his first issue, Gough contends that, in amending Regulation 635-100, the Texas Legislature deprived him of due process protections under the Fifth and Fourteenth Amendments. We will not entertain a due process challenge, however, unless the aggrieved party first demonstrates that the alleged constitutional deprivation does not result from its own inaction. *See McDonald v. City of Corinth*, 102 F.3d 152, 156 (5th Cir. 1996) (explaining that a party's failure to act may preclude due process claims) (citing *Richardson v. Perales*, 402 U.S. 389, 402 (1971)). Gough failed to exhaust his administrative remedy of appealing to the Army Board for the Correction of Military Records. Because Gough's due process challenge is not yet ripe, s*ee Patterson v. Planned Parenthood*, 971 S.W.2d 439, 442-43 (Tex. 1998), we decline to address his constitutional claims beyond the Supremacy Clause.

## CONCLUSION

Having overruled Gough's issues, we affirm the district court's granting of the Department's plea to the jurisdiction.

_____

Jan P. Patterson, Justice

Before Justices Kidd, Yeakel and Patterson

Affirmed

Filed:   January 25, 2002

Do Not Publish